SULLIVAN COUNTY, *Appellant,* v. HATFIELD *et al.*

---

DIVISION TWO.

---

1. **County Indebtedness:** FINANCIAL AGENT: BOND: SURETIES. Sureties on the bond of a financial agent appointed by the county court to negotiate the refunding of the bonded indebtedness of the county will not be liable beyond the amount of bonds authorized by the order of the county court to be negotiated.

2. ———: ———: ———: ———. If the amount provided for in the order of the court was not sufficient to refund the old debt, the court should have made another order and required a new bond of the agent.

*Appeal from Sullivan Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*D. M. Wilson*, Prosecuting Attorney, and *Huston & Parrish* for appellant.

The lower court erred in holding as matter of law, that the securities were discharged because the county court issued, in the course of the funding scheme, more than $120,000 in renewal bonds, to-wit, $170,000. It was on this ground the court decided the case, and this question is sharply put in the declarations of law refused for plaintiff and given for defendants. The scope of the contract of the securities is to be determined by the intention of the parties, as disclosed by the instrument read in the light of the circumstances surrounding it. *Lionberger v. Kreiger*, 88 Mo. 160. It was clearly contemplated that the entire railroad bonded indebtedness of the county should be taken up—funded. This was the scope of his employment. Increasing the responsibility of Hatfield, and the consequent risk of the securities, did not discharge the securities. Hatfield's duties were not thereby enlarged, the sphere of his duties remained the same—though, so far as the renewal bonds were concerned, the subject-matter of his charge might be increased. *Lionberger v. Kreiger*, 88 Mo. 160 ; *Bank v. Wallaston*, 3 Harr. 90 ; *Railroad v. Goodwin*, 3 Wels., Hurl. & Gor. 320 ; *Canal Co. v. Von Vorst*, 21 N. J. L. 100 ; *Strawbridge v. Railroad*, 14 Md. 360 ; *People v. Vilas*, 36 N. Y. 459 ; *Commonwealth v. Gabbert*, 5 Bush (Ky.) 438 ; *United States v. Gaussen*, 2 Woods, 92 ; *Sawyer v. Hicks*, 6 Watts (Pa.) 76. The better and more modern rule, deduced from the best-considered cases, is that an increase of liability, and consequent increase of risk on the part of the securities, does not discharge the sureties, if such increase could be reasonably anticipated when the bond is executed, in view of all the surrounding circumstances, unless thereby the nature of the duties are changed. *Marney v. State*, 13 Mo. 7 ; *Walker v. Chapman*, 22 Ala. 46.

Sullivan Co. v. Hatfield.

*John P. Butler* with *A. W. Mullins* for respondents.

(1) A surety may stand upon the terms of his contract, and its variation without his consent is fatal to a recovery upon it. *Miller v. Stewart,* 9 Wheat. ( U. S.) 234 ; *Smith v. U. S.,* 2 Wallace, 235 ; Murfree on Official Bonds, sec. 719 ; *State v. McGonigle,* 101 Mo. 363 ; *Lionberger v. Kreiger,* 88 Mo. 165. Nor can courts either abridge or extend the provisions of a contract deliberately settled between the pariies. 2 Blackstone's Com. 433. The obligations of a surety cannot be enlarged by the obligee, nor by the operation of law. *Carroll Co. v. Roberts,* 68 Mo. 234 ; Murfree on Official Bonds, sec. 718. The sureties are discharged if the principal, without their consent, make a new agreement, or alter the terms of the old one, or method of performing it. Dunlap's Abridgment, 309 ; Bishop on Contracts, sec. 765 ; Murfree on Official Bonds, sec. 718 ; 1 Greenleaf's Ev., sec. 303 ; 1 Story's Equity, 319 ; *Stillwell v. Aaron,* 69 Mo. 544 ; Brandt on Suretyship, p. 455. These securities did not undertake to be bound for any issue of bonds beyond $120,000. It was in relation to these they agreed to be bound, and it may well be that they would never have become responsible for any amount, had it not been for the provisions of the contract, excluding the last $40,000, and limiting the amount to $120,000. And when the county court innocently or otherwise violated this agreement upon which the sureties relied, and had the right to rely, they are discharged. *Ryan v. Shawneetown,* 14 Ill. 20 ; Brandt on Suretyship, p. 454. (2) If a material alteration is made in the contract without the sureties' consent, he is discharged although the alteration may be for his benefit. *Berthune v. Dozier,* 10 Ga. 235 ; *Rowan v. Mfg. Co.,* 33 Conn. 1. So far as the *Kreiger case,* 88 Mo. 160, is in point, it supports the doctrine asserted and contended for by the respondents.

THOMAS, J.—On the ninth day of November, 1878, L. T. Hatfield was appointed by the county court of Sullivan county financial agent to fund, by compromise, the railroad indebtedness of that county. The order of appointment prohibited him from including in the compromise "any of the bonds of said county, numbers from one hundred and sixty-one to two hundred, both inclusive, without the special order of this court."

On the tenth day of April, 1879, the county court made another order by which Hatfield, as the financial agent of the county, was authorized to negotiate for the exchange of renewal bonds for the outstanding bonds, at such rate as should not exceed an average of sixty cents for the face value of the old bonds, payable in new bonds, and for as much less as could be obtained, and, whenever an exchange of bonds was agreed upon, and before the new bonds should be delivered to said agent, for exchange, he should execute and deliver to the clerk of the county his bond in at least double the amount in value of the bonds to be exchanged, which bond should be made payable to the county, conditioned for the faithful discharge of the duties devolving upon him as such agent.

This order recited that the county had issued bonds dated November 1, 1871, payable to the St. Joseph & Iowa Railroad Company for the use of "the Central Missouri branch" thereof, for $1,000 each, due in twenty years after date, and that "the amount outstanding of said bonds is $200,000, which sum with all interest due on the first one hundred and sixty of said bonds up to February 1, 1879, is less than ten per cent. of the assessed value of the taxable property within this county, and constitutes the sole debt thereof (which fact this county court hereby finds and adjudges); now, therefore, under and by virtue and authority of an act of the general assembly of the state of Missouri, approved April 12, 1877, * * * this court hereby

affirms and engages to compromise and redeem such bonds with all interest due up to February 1, 1879, * * * and to carry into effect all compromises and redemptions to be made under this order; it is further ordered by the court that negotiable bonds of this county be issued, to be designated 'Sullivan county renewal bonds,' not exceeding the aggregate sum of $120,000, in denominations of $600, $500 and $100, due in twenty years from January 1, 1879, redeemable after five years, at the option of the county."

Hatfield gave bond in compliance with this order of the court in the sum of $30,000, dated April 12, 1879, with eleven sureties, which bond was duly approved, in which it was "expressly stipulated that in no event shall there at any one time be delivered to said L. T. Hatfield more than twenty-five of such renewal bonds, of a face value of $600 each, or the same amount of $500 and $100 in each combination to be equivalent to the twenty-five $600 bonds."

The county court issued renewal bonds, from time to time, to the amount of $120,000 in the aggregate, and delivered them to Hatfield, who exchanged them for the old bonds, and duly accounted for the same. The court then proceeded to issue other bonds, the last lot being issued in July, 1882, numbered from one hundred and sixty-four to two hundred and twenty-five both inclusive, each for $500, and two bonds for $100 each, and delivered them to Hatfield to be exchanged for the old bonds then still outstanding. Hatfield made an oral report to the court in which he stated that he had redeemed all but six of the old bonds, and that he had the renewal bonds in his bank safe. It turned out, however, that he borrowed several thousand dollars of a bank in Keokuk, Iowa, and deposited four old bonds, which he stated had been redeemed as collateral, and also borrowed several thousand dollars more of the same bank, and deposited the renewal

bonds, numbered from two hundred and fourteen to two hundred and twenty-five inclusive, as collateral. These were the renewal bonds which should have been used in taking up the remaining six old bonds, but which were thus converted to his own use by Hatfield.

The bonds, deposited by Hatfield with the Keokuk bank as collateral,. were afterwards sold and only enough was realized to pay the debts for which they were security. And this suit was brought against Hatfield and his sureties to recover the amount the county thus.lost.

The cause was tried before the court without a jury, and the court held that the sureties were discharged because the responsibility of Hatfield and their consequent risk had been increased by the renewal bonds, additional to those mentioned in the order of April 10, 1879.

We think it very clear that the judgment was for the right party. The sureties became liable for the amount of bonds authorized to be negotiated by the orders of the county court of November 9, 1878, and April 10, 1879, and no more. When those orders were made it is evident, the county court did not intend to pay the old bonds numbered from one hundred and sixty-one to two hundred, inclusive, and did not intend to issue renewal bonds exceeding $120,000, and the liability of the sureties cannot be extended by construction beyond that sum. When the court found that $120,000 would not be sufficient to refund the old debt, it was its plain duty to have made another order, and to have required a new bond of its financial agent. After the bonds to the amount of $120,000 had been negotiated by Hatfield and he had truly accounted for that sum the sureties were not bound further. *Bauer v. Cabanne,* 105 Mo. 110, and cases cited.

The judgment is affirmed. All concur.